May it please the Court, my name is Eitan Castellanich, and I'm representing Sakon Phimmasone in this appeal. Phimmasone was born in Laos and has very limited command of the English language. He's now 43 years old and he was 38 years old on the date of his serious injury in the rollover motor vehicle accident. I'm now going to focus on the errors by the ALJ which require that this Court reverse the ALJ's decision. I'm going to start with I think what the biggest error is, which is the failure to consider whether Phimmasone met or equal listings 12.02c and 12.04c. I'm in the lucky situation where between my filing this appeal and preparing my, between my filing this appeal and briefing it actually, I argued another case which was decided by the Ninth Circuit which is Frost v. Barnhart. In my brief I have the limited citation for it. The actual full citation is 314 F 3rd 359. In that case, it's directly on point with this case with the slight difference that Frost involved listing 12.03 and an ALJ's failure to consider listing 12.03c. In this case, this is an individual with organic brain trauma who was testing at, with an IQ in the mentally retarded range as a result of the head injury. Clearly this falls within 12.02 and there's a very strong argument to be made that he equals, meets or equals 12.02c. But in the ALJ's decision, he never even considered the listing, never even mentioned it. Was this raised in the district court? Excuse me? Was this raised in the district court? Yes, it was. What about 12.04? Was that raised? Excuse me? Was 12.04 raised? Yes. Actually, I'm sorry. I'm going to go back on that for just a second. There's a complication in this case which is why I'm not remembering what I did in district court which is another attorney represented for Misoni in district court didn't do the very, the world's greatest job of briefing as you can see by looking in the file. He was focusing primarily on 12.05 as the biggest issue because 12.05 deals with mental retardation, an IQ below 70 and really an argument that was made was that he meets 12.05c. Government responded, well, no, he can't do that because he didn't have this prior to age 22. We argue instead he should have been found to equal 12.05c. But really, the real section of the listings that applies is 12.02. Well, can I just ask you about 12.05c? These don't roll off our tongue quite as easily as they do yours. Please. But is, I understand the argument to mean that because he functionally meets all the 12.05c, other than the fact that he had it early on, that your argument is that it's essentially equivalent, correct? Exactly. If the person is in the same boat as somebody who meets the listing except he doesn't meet that one criteria of it which is onset prior to age 22, he could be found to equal it. But didn't you argue, I'm on 12.05 now, didn't you argue it did not begin until after the accident? Exactly, which is why he can't meet. That would be an argument, so that would not... He can't meet it, but he can be equivalent, right? He can't meet it, but he can be equivalent to it, equivalent in severity. He certainly can't meet it because of that age 22 thing. Interestingly, even Social Security made the same mistake in their special medical consultants who did the evaluations kept rating him under 12.05 instead of 12.02. I don't understand that. There is a durational requirement under 12.05. How could anything be the equivalent? It's either before the age of 22 or it's not. What could be the equivalent? If you yourself or the attorney below argued that it didn't... Well, that's not so much of a durational thing as an onset issue. Well, didn't the attorney below argue that the onset was only after the accident? Oh, absolutely. There's no debate about it because he was quite functional. He worked very successfully until his rollover car accident. He worked beyond, he got in an accident, hunting accident with all these beauties all in his face. So now you have to notice on 12.02 and 12.04. Is that your better argument? It is a much better argument. That's where it should have been evaluated. The ALJ has a responsibility. ALJ knows... Didn't your reply brief in the Supreme Court concede that 12.02 and 12.04 were not met? That 12.02 and 12.04 were not met? Yes. No. Did not concede that? But they're not met? Absolutely not. They're arguably met or equal here. And it's... And this was not conceded in the district court, in the briefs of the district court? You know, I say in district court. Once again, I can't quite make heads or tails out of some of the stuff that was done by the previous attorney. I'm asking a question. In the reply brief in the district court, was there not a concession that 12.02 and 12.04 were not met? I don't think they were discussed in quite that... They were mostly... Okay, here we go. No. Okay. Not met. Yes, you're correct. More appropriately, it should have been evaluated under 12.02. It's acknowledged that the medical evidence does not establish that all of the B criteria under 12.02 have been met. But there's the C criteria. Now, is this effective advocacy? Absolutely not. Well, it sounds to me like more than ineffective advocacy. It sounds to me like a concession. The question is waived, conceded below. He did not concede that it was not equaled. He conceded that it was not met. He did not concede that 12.02C was not met or equaled. Those were not mentioned. Those are the things that should have been discussed, obviously. He did concede that it's the 12.02 as well. I can read you from his brief. I mean, he said it is acknowledged that the medical evidence does not establish that all of the B criteria under 12.02 have been met. We have to distinguish between met or are equivalent. There's two aspects to it. Exactly. You cannot meet them but still be equivalent in severity. And he doesn't mention the C criteria for all I know. He wasn't aware of it. The regulation was changed shortly before the hearing. And the regulation was in effect on the date of the hearing. The ALJ is responsible to know what the law is he's supposed to be applying. The ALJ did not apply 12.02C or 12.04C. 12.02 is honestly the strongest argument. The uncontradicted medical evidence which the ALJ never addressed, never explained what weight he was giving to it. The uncontradicted evidence showing that his IQ after his accident was under 70 right there meets one of the criteria under 12.02 of a significant loss of intelligence. Once again, the ALJ is responsible for considering all of the regulations, all of the applicable rules. He didn't do it here. That's the big error here. The facts of this case, other than the issue of how well... He had a number of physicians. All said that they examined him and he is able to do work. He himself testified as to his ability to perform daily tasks and take care of children, shop and so on. I don't see where you can see any arguments showing that the ALJ was clearly erroneous. The testing from Dr. Reed that showed the verbal IQ of 66, performance IQ of 67 and full scale IQ of 64 in which Dr. Reed said, I'm confident these results reflect a cognitive deficit that was probably not present before the most recent accident involving coma. I mean, this is uncontradicted medical evidence. The ALJ never credited it, never rejected it. The ALJ just didn't even deal with it at all. Didn't Dr. Reed also say he couldn't work? Absolutely. So not all the doctors said he could work. Some doctors didn't make a comment. But Dr. Reed specifically said he could not work. His mental impairment here is the big issue. And the effect that it has on his ability to concentrate, his ability to perform at any kind of reasonable pace, even the ALJ, the government had conceded that his concentration was often or frequently impaired. I mean, this man is not functional. And the lay testimony supported it as well. There was no dealing with the lay testimony. I think I have to reserve. I've got almost my time left. Let me ask a question before you sit down. Is it correct that the administrative law judge did not specifically address the testimony of Dr. Reed? He didn't specifically address Dr. Reed's opinion at all. He did not. I mean, he mentioned it, but he did not explain. And that's a requirement in our circuit. Absolutely. He's got to say what weight he's giving to that, the key evidence in the case, the key evidence proving disability. Thank you. Thank you. Good morning, Your Honors. David Johnson for the Social Security Administration. Mr. Femisoni has had a lot of trouble in his life. We've read about that. He's had some very damaging physical injuries. But the question here is whether or not he is disabled under the Social Security Act. Since your time is so short, could we just jump right to what I just asked opposing counsel about, the failure of the administrative law judge to comment specifically on the testimony of Dr. Reed, that Mr. Femisoni, I never know how to pronounce that, is unable to work. Certainly. Did he in fact say he wasn't able to work? I thought he said this had an effect on his ability to work. He certainly said that. He certainly said that Mr. Femisoni had cognitive limitations and the ALJ accommodated those cognitive limitations in his residual functional capacity finding. The record as a whole determines the residual functional capacity finding. An individual doctor's opinion that someone is or is not employable or cannot perform work is beyond the doctor's capacity because they're a medical doctor, not a vocational expert, and it's an issue reserved to the commissioner. The regulations specifically hold back issues that even though a doctor may give an opinion on and the ALJ must consider that opinion, which the ALJ did consider all of Dr. Reed's opinions here. He didn't make a comment on that. He may not have commented specifically on the issue reserved to the commissioner. He may not have commented specifically on that, but at ER 155 the ALJ discusses in detail or summarizes, I should say, Dr. Reed's findings. But he didn't say why he rejected his findings. Correct. The difficulty I have with this record is that under the Social Security law, if you're going to discredit or override the treating physician's findings, then you have to tell us why. Instead, this seems in good faith like a nice recitation, but he forgot part two, in other words. Not that he couldn't have done that, but it seems like he didn't do that here. Maybe is there a place in the record I'm missing because I read this opinion several times. I think the answer is that he didn't need to reject Dr. Reed's findings, Dr. Beaver's findings, Dr. Quattrone's findings because they were consistent with the residual functional capacity when viewed in the light of the entire record. We also have the help of experts. Do Dr. Reed say he couldn't work? I also have to apologize that I'm not the attorney who wrote the original brief. I'm not that familiar with the facts. I will find out for you, and I can submit that as additional information. His report is in the record. Excerpt of record page 70. Dr. Reed concluded that he is now not able to go back to work. ER 70. I see it. He is now not able to go back to work due to a combination of cognitive and physical problems and chronic pain that he experiences in his back and neck and periodic pain in his eyes and head. Well, you're quite right. The AHL could reject that, but he has to make a comment on why he is not crediting Dr. Reed's testimony, doesn't he? No. Does Dr. Reed say he's permanently disabled? No. Dr. Reed says now he can't, and that was September 25th of 1999. The ALJ makes his decision as of the date of the decision that he makes based on the entire record. So the condition of the person may change over time. Indeed, but doesn't the ALJ then have to make a comment? I am rejecting what Dr. Reed said about at this time he's not able to go. It appears to me from the record that he's able to go back to work because of X, Y, and Z. I didn't see that in the record. The ALJ must show the reviewer that he's not being arbitrary in his findings, that he considered the evidence. But then nowhere does Dr. Reed, so far as I can tell, say that he expects Mr. Femisoni's condition to continue beyond the date of the evaluation at the same level of severity. He doesn't state in that sentence where he says he's now not able to go back to work. Does the ALJ give any evidence that this condition has not continued? Yes, via the DDS, I'm sorry, Disability Determination Services Doctors. Where is that found? Social Security ruling 966P says they're experts in the disability process. Oh, we're in the record, Nikon. Oh, I'm sorry, that's Dr. Sanford, Dr. Profance.  That would be ER 75 through 91, and 92 through 95. Those doctors evaluated his mental capacity in light of the entire record and the Social Security law. They also evaluated his physical capacity in light of the entire record and the Social Security law. So when the ALJ considers all of the medical evidence, which we know he did from his decision, he comes up with the residual functional capacity, which captures what Mr. Femisoni's condition is like as of the date of the decision. Would you clarify for me under 1205C, to meet it, you need to have an onset before you're age 22. But to be equivalent to it, would you be able to be equivalent if you had the mental status findings that met all the criteria, but they didn't occur before you were age 22? Tackett, I think, gives us some direction here, and it's the difference between changing a characteristic of the listing and just being equivalent to one of the characteristics. Here, they would like to erase the characteristic that onset of retardation must occur before age 22. That's an important element, characteristic, because development of a human person occurs between birth and, the Social Security Administration has determined, approximately age 22 for the purposes of this listing. Mr. Femisoni was fully functional before his unfortunate accidents. He was a diesel mechanic in Laos. There's no question that he was able before. Then he had these accidents, so his development occurred normally and naturally, and then his brain is impaired. He may be disabled if he can establish it through other evidence, but not under listing 1205C by being equivalent to that listing without one of its elemental characteristics. Then you have to go to 1202. Is that right? 1202 would be the organic brain disorder. That's correct. And regarding the C criteria specifically, they require that his condition is attenuated by medication or counseling, and that's not the case here. In other words, the B criteria describe the severity of an individual not on medication, and he doesn't fit that, especially because he hasn't had any decompensations. If he doesn't fit that severity, we look. Maybe it's because he's on medication or he's receiving ameliorative counseling, and that's lowering the severity, but he's on the edge. Let me ask you about the tactic case. With respect to 1202 now, not 1205, does it say that if he could show equivalent severity and duration, then that's sufficient? If he has medical evidence to show severity that's equivalent, that means the doctor is saying, for everyone else in the world, this particular element of severity is as listed in the listing. Because in Mr. Femisoni's case or Ms. Jones' case or whoever hypothetical case we're talking about, they have this other thing coming in. Medically, I would say in my professional opinion, that's really the same thing as everyone else's over here. That was my point. Isn't that what they were attempting to do here? Well, in the district court, of course, they took back that argument, and that's at the supplemental excerpts of records 48. They said, no, Mr. Femisoni does not meet the listing. That's not the same as being equivalent. Being equivalent, correct. So in other words, I'm having a little trouble trying to stick them with, they all along conceded the meeting criteria in these, but they never conceded the equivalency criteria the way I read their briefs. All right. I mean, do you disagree with that? I'll say this, that the equivalence I'm sorry. Yes or no answer. Do you disagree that they did not explicitly waive an equivalency argument? In the briefs before this court, it seems to my recollection, I'd have to look to be sure, that they kept repeating meet or equal, meet or equal. Well, I mean, for example, on page 37 of their brief, they make it pretty clear that they were correct in 1205C that they didn't meet, but then they go on and talk about equivalency. So it seems to me that they explicitly preserved that argument in everything that I read. You can point me to somewhere where you think they waived it, and I'll go back and read that. At the plaintiff's appellant's brief at 41, they contend that the ALJ should have found that Femasoni met or equaled listing 1202C and or listing 1204C. Additionally, Gonzalez says that the ALJ doesn't have to spell out why a claimant doesn't meet every aspect of every listing. The summary of the evidence and then a discussion of the limiting factors and the functional abilities is sufficient. Okay, thank you. Thank you. I believe you have a few minutes. We'll give you a minute for a bottle. Okay. Did Dr. Reed say he's permanently disabled? Yes. Well, put it this way. He said the prognosis, in terms of the overall long-term look, prognosis appears to be very guarded. It's not clear to me what medically could be done to help him return to his former physical functioning. But even if the physical condition were better, he appears to have quite significant cognitive difficulties that would have an impact on his ability to maintain employment. Well, that's what I read. And I said, well, he said it has an impact. It doesn't tell us how much of an impact. He certainly does not say he can't work. Now, I was reading from ER 69. On ER 70, he goes even further and says he couldn't work at that time. You have to remember that that was almost one year. Well, he said he couldn't work at that time. Lots of people are sick. And he has a very guarded prognosis on top of that. Couldn't work at that time with a very guarded prognosis. It sounds to me like Dr. Reed did everything but say that the guy was permanently disabled. I mean, he sort of beat around the bush. He uses Dr. Reed. It's not his call to say whether they're disabled. It's really the call of Social Security. All he can do is give us. He can say whether or not he thinks medically this guy can go back to work. And I looked at it. I saw the absence of that kind of a statement. And doctors make statements like that all the time in these cases. You've seen them. And what struck me about Dr. Reed is he sort of beats around the bush when he says everything but. I should point out that as far as the experts. Given that, was there some reason that ALJ was required to reject that since he doesn't really. ALJ was required. He did mention it. He did mention it. He discusses symptoms in his discussion. He discussed the symptoms that Dr. Reed talks about. He didn't give any reason whatsoever for rejecting it. There was no additional psychological testing on that. It's not like Dr. Reed talked about certain symptoms that ALJ did not consider. What he didn't reject is Dr. Reed's specific conclusion. He didn't reject his conclusions. He didn't reject his statements about this man has a poor prognosis, his IQ is below 70, and he's got severe difficulty working. I have to point out that as far as the 12.05 argument, it's very interesting that their so-called expert, the DDS doctor, this is at ER 79, who filled out the form. That's the only additional evidence beyond Dr. Reed's report. Their own expert checked 12.05. Checked 12.05. It did apply. Their own expert made the mistake. That's the expert they're relying on. He was wrong. He also checked 12.02, but he filled out this form, which starts at about 73 or 75 or so and runs through. Filled it out completely wrong. On 12.02, he said he had dementia due to head trauma, but he said it was relatively mild, which it has nothing. That is completely inconsistent with Dr. Reed's opinion, and DDS doctors' opinions aren't even substantial evidence for purpose of contradicting an uncontradicted opinion such as Dr. Reed's. We're not seeing something else to rely on. Okay. Thank you. Thank you. These are the arguments that are submitted. We'll hear the next argument in the Providence Health System, Mrs. Thompson.
judges: D Nelson, Kozinski, McKeown